# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RAY C. REDMOND,

    *Plaintiff*,

*v.*                          CASE NO. 2:13–CV–12758-PDB–PTM

COMMISSIONER OF              DISTRICT JUDGE PAUL D. BORMAN
SOCIAL SECURITY,           MAGISTRATE JUDGE PATRICIA T. MORRIS

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://www.uscourts.gov/RulesAndPolicies/JudiciaryPrivacyPolicy/March2008 RevisedPolicy.aspx. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 12, 14.)

Plaintiff Ray Redmond was 62 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 21, 139.)  Plaintiff worked as a machine operator for 20 years and as a custodian for 9 years. (Tr. at 176.)  Plaintiff filed the present claim on July 18, 2011, alleging that he became unable to work on an amended onset date of January 24, 2011. (Tr. at 11, 139.)[2] The claim was denied at the initial administrative stages. (Tr. at 63.)  In denying Plaintiff's claim, the Commissioner considered disorders of back, discogenic and degenerative, and osteoarthritis an allied disorders. (*Id.*)  On July 26, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Gregory Holiday, who considered the application for benefits *de novo*. (Tr. at 6-22, 23-55.) In a decision dated August 8, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 18.)

Plaintiff requested a review of this decision, and on May 2, 2013, the ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), when, after review of additional exhibits[3] (Tr. at 204-07, 467-98),

---

[2]Defendant's brief indicates the amended alleged onset date is August 11, 2011 (Doc. 12 at 7) but the ALJ indicated it was January 24, 2011. (Tr. at 11.)

[3]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On June 21, 2013,

Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable

decision.

### B.     Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which

the administrative agency handles claims and the judiciary merely reviews the determination

for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493

U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990), *superseded by statute on other*

*grounds*, Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L.

No. 104-193, 110 Stat. 2105. The administrative process itself is multifaceted in that a state

agency makes an initial determination that can be appealed first to the Social Security Agency

itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142,

107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review

process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d

535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the

Court "'must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402

F.3d 591, 595 (6th Cir. 2005) (*quoting Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th

Cir. 2004). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In

deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record before

the ALJ only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). *See also Jones*,

336 F.3d at 475. "The substantial evidence standard presupposes that there is a '"zone of

choice"' within which the Commissioner may proceed without interference from the courts."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800

F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a

reviewing court must consider the evidence in the record as a whole, including that evidence

which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680,

683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence

in the record, regardless of whether it has been cited by the Appeals Council." *Heston v.

Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that

either the ALJ or the reviewing court discuss every piece of evidence in the administrative

record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ

can consider all the evidence without directly addressing in his written decision every piece of

evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d

436, 453 (6th Cir. 1999)); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th

Cir. 2006).

**C.    Governing Law**

5

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the

regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . ." *Jones*, 336 F.3d at 474, *cited with approval in Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through June 30, 2014, and that Plaintiff had not engaged in substantial gainful activity since January 24, 2011, the amended alleged onset date. (Tr. at 11.) At step two, the ALJ found that Plaintiff's

hypertension, osteoarthritis of the right elbow, and diverticulosis/GERD were "severe" within the meaning of 20 C.F.R. § 404.1520. (*Id*.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 12.) At step four, the ALJ found that Plaintiff was able to perform his past relevant work as a custodian. (Tr. at 16-18.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of medium work. (Tr. at 12-16.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 18.)

### E.    Administrative Record

The relevant medical evidence contained in the administrative record indicates that Plaintiff participated in physical therapy from July to August of 2008 at St. John Providence Health Center for Rehab & Fitness. (Tr. at 208-18.)  Upon discharge, it was noted that Plaintiff's strength in his bilateral hips was a check + and 4-/5, that his ability to do stairs was 10% better. (Tr. at 208.)

Plaintiff was treated at St. John Providence Hospital from August 2008 through 2011. (Tr. at 219-28, 344.)

Plaintiff's primary care physician was Dr. Manhal Tobia who treated Plaintiff between 2005 and 2012. (Tr. at 229-340, 345-461, 465-66.)  A colonoscopy was performed on February 21, 2005, which revealed a 2 mm colon polyp and diverticulosis. (Tr. at 262.)

On January 25, 2007, a CT scan of Plaintiff's lumbosacral spine showed "minimal rotoscoliosis of the lumbar spine, convexity to the right" and "[m]ild degenerative arthritis." (Tr. at 267.)  On January 31, 2007, an MRI of the lumbar spine showed a "mild degree of multilevel degenerative disc disease and spondylotic change." (Tr. at 270, 441.)

8

On August 29, 2007, Dr. Tobia indicated that all of Plaintiff's systems, extremities, heart, and neck were all normal. (Tr. at 252-53.)   Dr. Tobia diagnosed diverticulosis and colon polyps. (Tr. at 253.)

On June 5, 2008, a CT scan of the left hip showed "degenerative arthritic change at the left hip joint." (Tr. at 273.)  Throughout 2009 and 2010, Dr. Tobia noted that Plaintiff was "stable" and "doing well." (Tr. at 317, 318, 320, 321.)  On March 18, 2010, Plaintiff's colon polyps were surgically removed. (Tr. at 281-85.)

On March 29, 2011, Dr. Tobia noted that Plaintiff "has been doing well since last visit, denies any new complaints, he has been taking his medications regularly and watching his diet closely." (Tr. at 363.)

On September 29, 2011, Dr. Tobia noted that Plaintiff reported he was "still having aches and pains in his lower back in the groin region and now is also having pain in the right elbow area." (Tr. at 359.)

On October 17, 2011, a CT scan of Plaintiff's right elbow showed "[m]oderate osteoarthritis of the radial and ulnar compartments." (Tr. at 357.)

On January 30, 2012, Plaintiff saw Dr. Tobia for a physical and reported that he "has been doing well and denies any new complaints." (Tr. at 345.)  Dr. Tobias found all of Plaintiff's systems were "normal." (*Id.*)  A chest x-ray taken that day was "negative" and showed "[n]o significant change when compared to previous chest of 1/27/11." (Tr. at 348.)

A Medical Assessment of Ability to do Work Related Activities was completed by Dr. Tobia on July 24, 2012. (Tr. at 462-64.)  Dr. Tobia concluded that Plaintiff can lift/carry less than 10 pounds, walk less than one hour total, but does not need to use a cane or assistive

9

device, can sit for less than 2 hours total, would need to take hourly breaks, would have unspecified limitations in using his right upper extremity, could never stoop, crouch or climb ladders but could rarely climb stairs, and that pain would frequently interfere with his attention and concentration needed to perform even simple work tasks. (*Id.*)  Dr. Tobia also concluded that Plaintiff would not be capable of performing a full-time job on a sustained basis, without stating any reasons for his conclusion. (Tr. at 466.)

At the administrative hearing, Plaintiff testified that he lives in a two-story home that has bedrooms upstairs and a partially finished basement where a television, sofa and laundry facilities are located. (Tr. at 31.)  Plaintiff lives with his wife and his American bulldog. (Tr. at 32.)  Plaintiff stated that sometimes his wife helps him dress and helps him get in the shower since he has to step over the bath tub to take a shower. (Tr. at 32-33.)  Plaintiff indicated that he "periodically" dusts, vacuums, and that he is able to make sandwiches for himself when his wife in not home. (Tr. at 35.) Plaintiff moved his bedroom from the second story to the main floor. (Tr. at 40.)  Plaintiff enjoys watching movies, and he stated that he "can walk 30 minutes at a time and then I have to stop and sit down, get up, you know, stuff like that." (Tr. at 35-36.)  Plaintiff testified that he keeps his cane with him "at all costs" but when asked if he never walks without a cane, he responded, "I believe I do sometimes but you know most of the times I got my cane with me." (Tr. at 37.)  Plaintiff goes grocery shopping with his wife, uses his debit card and has no problem remembering the PIN number. (Tr. at 38.)  Plaintiff also goes to church three times a week. (Tr. at 39.)  Plaintiff was wearing a brace on his right hand and when asked if that was prescribed for him, he responded, "Yeah, a doctor named - - Dr. Kim Lai [phonetic].  I don't know if he's still living or not, whatever." (Tr. at 41.)  The ALJ then clarified that the brace was prescribed some years ago. (*Id.*)  Although Plaintiff's right elbow bothers him, and he is right-handed, he is able to write with a pen or pencil. (Tr. at 42-43.)  When asked whether he has difficulty sitting, Plaintiff

responded, "Yeah, I want to stand up right now." (Tr. at 43.)  Plaintiff stated that he can only walk for about a block before having to sit down and can only stand for "maybe about 15 minutes, something like that." (Tr. at 44-45.)  Plaintiff indicated that he "probably can lift about five or 10 or 15 pounds, something like that." (Tr. at 45.)

The ALJ asked the vocational expert ("VE") at the hearing to consider an individual with Plaintiff's background who:

> is able to perform at not more than medium exertion level with the following limitations.  No more than frequent pushing or pulling with the right upper extremity.  No more than occasional climbing of ladders, cannot climb any ropes or scaffolds.  No more than frequent gross manipulation and fine manipulation with the right upper extremity.  And no more [than] frequent operations of foot controls bilaterally.

(Tr. at 49-50.)  The VE responded that such a person could perform both of Plaintiff's past jobs. (Tr. at 50.)  The VE added that such a person could also perform the 2,000 sorter positions and 6,000 hand packer positions available in Southeastern Michigan at the medium unskilled level. (*Id.*)

For the second hypothetical, tThe ALJ then asked the VE to assume the same conditions as the first hypothetical and to add the limitation of "no more than occasional stooping, crouching, or kneeling."  (Tr. at 50-51.)  The VE responded that the machine operator job would be eliminated but that the custodial job would remain and that the sorter job would be eliminated but the hand packer job would remain. (Tr. at 51.)  When asked if there would be other jobs, the VE indicated that to find other appropriate jobs, he would have to look at light, unskilled jobs. (*Id.*)

For the third hypothetical, the ALJ asked the VE to add to the above limitations that the person could only perform at the light exertional level and would require a sit/stand option. (*Id.*)  The VE responded that such a person could perform the 3,000 packer jobs, 2,000 sorter jobs, and 3,000 inspector checker jobs available in Southeastern Michigan. (*Id.*)

11

For the fourth hypothetical, the ALJ asked the VE to assume the same limitations with the addition of using a cane for balance while standing and the VE indicated that he would need to go to the sedentary exertional level to find appropriate jobs. (Tr. at 52.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of medium work. (Tr. at 12-16.) "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. 404.1567(c).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 12.)  As indicated above, if the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. 42 U.S.C. § 405(g);  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff argues that the "ALJ erred in finding Plaintiff's degenerative arthritis of the left hip and back are non-severe impairments (Doc. 11 at 10-13,) the "ALJ failed

to give proper deference to the opinion of Plaintiff's treating physician [Dr. Tobia] (Doc. 11 at 13-15,) that the "ALJ made an improper credibility determination. (Doc. 11 at 16-17,) and that the "ALJ erred in finding that Plaintiff could perform his past work." (Doc. 11 at 17-19.)

### a.    Severe impairments

As stated above, Plaintiff contends that the ALJ erred by omitting certain diagnoses from the Step Two list of severe impairments, i.e., Plaintiff's degenerative arthritis of the left hip and his back. (Doc. 11 at 10-13.) However, once step two is "cleared" by a finding that some severe impairment exists, the ALJ must consider a plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony*, 266 F. App'x at 457. "The fact that some of [the plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* Consequently, I suggest that any alleged omission from the list of severe impairments does not undermine the ALJ's decision. As to the RFC analysis, the ALJ expressly stated that he considered all of the claimant's impairments, including impairments that are not severe. (Tr. at 13.) I therefore suggest that the ALJ committed no error. *See Kornecky,* 167 F. App'x at 508 ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party").

### b.    Medical Sources, Plaintiff's Credibility, and the RFC

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B); *accord* 20 C.F.R. § 404.1520(a)(3); *Wyatt*, 974 F.2d at 683.

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do

despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

The regulations carve the evidence into various categories, but the only relevant distinction for present purposes is between "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). There are important differences between the two types of sources. For example, only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2.

Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her residual functional capacity. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from non-treating acceptable sources, 20 C.F.R. § 404.1527(c), and the ALJ should almost certainly use the same analysis for "other source" opinions as well. *See Cruse*, 502 F.3d

14

at 540-42; SSR 06-3p, 2006 WL 2329939, at *2. The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. *See also* 20 C.F.R. § 404.1527(c).

"The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Certain opinions of a treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502.

The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will

not give any special significance to the source of an opinion[, including treating sources],"

regarding whether a person is disabled or unable to work, whether an impairment meets or

equals a Listing, the individual's residual functional capacity ("RFC"),[4] and the application of

vocational factors. *Id.* § 404.1527(d)(3).

Because of the special status of treating source opinions, where the ALJ "failed to

conduct the balancing of factors to determine what weight should be accorded these treating

source opinions . . . , [t]his alone constitutes error." *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653,

660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir.

2009)). But this error is not always dispositive and can be considered "harmless error" if: "(1) a

treating source's opinion is so patently deficient that the Commissioner could not possibly

credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings

consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . .

. even though she has not complied with the terms of the regulation." *Cole*, 661 F.3d at 940

(quoting *Wilson*, 378  F.3d at 547).

After treating sources, a "nontreating source, who physically examines the patient 'but

does not have, or did not have an ongoing treatment relationship with' the patient, falls next

along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012)

(quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a

non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the

---

[4] The Commissioner's power to determine the claimant's RFC is less capacious than it appears at first. While the ALJ determines the RFC, the ALJ might be required to give controlling weight to treating source opinions on specific limitations. *See* 20 C.F.R. § 404.1513(b)-(c) (describing that medical reports can include a source's "statement about what [the claimant] can still do despite [her] impairments"). These opinions would necessarily affect the RFC. *See Green-Young v. Barnhart*, 335 F.3d 99, 106-07 (2d Cir. 2003) (holding that treating physician's opinion that claimant could not sit or stand for definite periods "should have been accorded controlling weight").

opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

Finally, the social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Finally, the ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "'objective evidence of the pain itself'" is not required. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweicker*, 749 F.2d 1066, 1071 (3d 1984)), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(I)      [D]aily activities;

(ii)     The location, duration, frequency, and intensity of . . . pain;

(iii)     Precipitating and aggravating factors;

(iv)     The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)      Treatment, other than medication, . . . received for relief of . . . pain;

(vi)     Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3); *Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless [she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most [she] can still do despite [her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). The hypothetical is valid if it includes all credible limitations developed prior to step five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Mich. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 2009).

**b.     Analysis**

The ALJ gave sufficient explanations of the weight accorded the medical source opinions. (Tr. at 18-19.)  In addition, I suggest that these explanations and the ALJ's resulting RFC findings are supported by substantial evidence.

The ALJ noted that Dr. Tobia's treatment notes diagnosed hypertension, hyperlipidemia, and GERD, but did not mention osteoarthritis, degenerative disc disease, or carpal tunnel syndrome, and

that Plaintiff's physical examinations were all within normal limits. (Tr. at 13.)  For these and other reasons, the ALJ rejected Dr. Tobia's RFC conclusions in his medical assessment form and ultimate conclusion that Plaintiff cannot work. (Tr. at 13-16.)

The ALJ owed no deference to Dr. Tobia's RFC conclusions or ultimate conclusion that Plaintiff cannot work. (Tr. at 465.)  The RFC finding and determination whether a person is capable of working are both conclusions reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2.  In addition, I suggest that Dr. Tobia's underlying RFC findings are inconsistent with his own treatment notes and the evidence of record such that substantial evidence supports the ALJ's rejection of his opinion. Although Dr. Tobia found Plaintiff could only lift less than 10 pounds (Tr. at 462-64,), Plaintiff himself testified that he could lift up to 15 pounds. (Tr. at 45.)  Similarly, although Dr. Tobia indicated that pain would frequently interfere with his attention and concentration needed to perform even simple work tasks, there is no evidence or mention of any mental impairments.  Even more importantly, overall, Dr. Tobia's treatment records consistently noted that all Plaintiff's systems upon examination were "normal," and that Plaintiff was stable and reported that he was doing well. (Tr. at 252-53,  317, 318, 320, 321, 345, 363.)  One exception occurred on September 29, 2011, when Dr. Tobia noted that Plaintiff reported he was "still having aches and pains in his lower back in the groin region and now is also having pain in the right elbow area." (Tr. at 359.)  However, Dr. Tobia's single notation of less than controlled pain in six years of treatment does not support a finding that Plaintiff is disabled.  The overwhelming evidence in Dr. Tobia's treatment notes supports the ALJ's decision to reject his opinion.

Objective medical evidence also supports the ALJ's RFC findings and rejection of Dr. Tobia's conclusions. Plaintiff's degenerative arthritis in the lumbar spine and hip were consistently described as "mild" and "minimal" in the CT scan and MRIs. (Tr. at 267, 270, 273, 441.)  Plaintiff's right elbow showed "[m]oderate osteoarthritis" but this does not equate to a finding of disability. (Tr. at 357.)

There is room for argument as to whether the RFC should have limited Plaintiff to light work rather than medium work.  Even assuming, *arguendo*, that the ALJ's finding that Plaintiff could perform his past job and medium work rather than light work was in error, since the VE also described light jobs that Plaintiff could perform (Tr. at 51,) any error would be harmless and remand would be futile. *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004)(remand futile where error harmless); *Mitchell v. Comm'r of Soc. Sec.*, No. 5:12-cv-1288, 2013 WL 3057074, at *10 , n. 10 (N.D. Ohio June 17, 2013)("Since the VE listed jobs that met the hypothetical and those jobs were all sedentary jobs, the light limitation, even if erroneous, is harmless.")

Finally, I note that Plaintiff has been treated with physical therapy and prescription medication only; such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007). I therefore suggest that substantial evidence supports the ALJ's conclusions.

As to Plaintiff's credibility, the ALJ properly considered the requisite factors (Tr. at 13-16) and concluded that although the impairments might be expected to cause the symptoms alleged, Plaintiff's statements concerning the limiting effects of the symptoms were not credible to the extent they are inconsistent with his RFC findings. (Tr. at 13.)  I suggest that these findings are also supported by substantial evidence for the same reasons as stated above.  I also note that although Plaintiff testified

20

that he keeps his cane with him "at all costs" or at least "most of the times" (Tr. at 37,) there is no mention of a cane being used or prescribed in the record and even Dr. Tobia, in his assessment which concluded Plaintiff could not work, indicated that Plaintiff does not need to use a cane or assistive device. (Tr. at 463.)  In addition, although Plaintiff wore a brace on his right hand to the hearing for carpal tunnel syndrome, there is no evidence that Plaintiff currently has carpal tunnel syndrome and even Plaintiff could not remember the name of the doctor who allegedly gave him the brace or whether that doctor was still alive. (Tr. at 41.)

### 3.    Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "'zone of choice' within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035 (quoting *Mullen*, 800 F.2d at 545), as the decision is supported by substantial evidence.

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Date:  July 30, 2014

/S PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge